UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAWN WARE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV01332 AGF |
| ) | |
| WHITING CORPORATION, and ) | |
| WAZEE ELECTRIC COMPANY ) | |
| d/b/a WAZEE CRANE, INC., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on several pretrial motions filed by Defendants Whiting Corporation ("Whiting") and Wazee Electric Company ("Wazee").[1] Plaintiff Shawn Ware alleges in this product liability case that he sustained severe injuries on July 23, 2003, when he was working for his employer, as a maintenance worker, on the gear case of an overhead crane. Wazee designed, manufactured, and sold the crane, and Whiting designed and manufactured certain component parts, including hoists, gears, and the gear case in question. Plaintiff seeks damages under several theories of recovery: strict liability for design and manufacture (Count I); strict liability for failure to provide an adequate warning on the gear case and in the operations manual (Count II); and negligence in design and manufacture, and in failing to provide adequate warnings (Count III). Each Defendant now moves for summary judgment on the claims that the

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

contents of the warnings in question, as opposed to their placement, were inadequate. Each Defendant also moves to exclude the opinion of Plaintiff's expert, James J. Briem, related to both the location and the content of the warnings.

On August 16, 2007, oral argument was held on the motions for partial summary judgment. For the reasons set forth below, the motions for partial summary judgment shall be denied, and the motions to exclude Mr. Briem's opinions shall be granted.

## BACKGROUND

Plaintiff worked for Doe Run Resource Recycling Corporation at its lead recycling facility. The crane in question stopped working, and Plaintiff and two other maintenance workers were asked by the maintenance coordinator to check the gear case on top of the crane. The power of the crane was shut off, but unbeknownst to Plaintiff, his two co-workers, and the maintenance coordinator, there was a load of at least 1,000 pounds hanging from the hoist system of the crane, several feet from the floor. After Plaintiff removed the cover of the gear case, a large gear jumped out of the gear case, as a result of the load, and crushed Plaintiff's left leg. A horizontal warning label on top of the gear case cover provided, in relevant part:

**WARNING**

**GEAR DISENGAGEMENT
AND
LOAD-DROPPING HAZARD**

_____
DO <u>NOT</u> REMOVE TOP HALF OF GEAR CASE
WHILE LOAD BLOCK IS HANGING FROM CRANE.

1. BEFORE LOOSENING FASTENERS TO REMOVE TOP HALF OF GEAR CASE, LOWER LOAD BLOCK COMPLETELY TO REST ON FLOOR.

A small pictorial representation showed a load about to fall on a person.

The operation and maintenance manual for the crane contained a warning in a section entitled "Periodic Inspection and Preventative Maintenance," cautioning against removing the cover of the gear case while the load block was hanging from the crane, as the block may drop. This warning also cautioned against attempting to operate the hoist under power while the gear case cover was removed.

It is undisputed that neither Plaintiff, his two co-workers, nor the maintenance coordinator knew about the particular danger that caused Plaintiff's injuries. The evidence also established that these four individuals never read the warning on the gear case cover or in the manual. For purposes of the motions before the Court, it is assumed that the reason the warning label on the gear box was not read was that the label was covered by industrial dust. Plaintiff testified by deposition that had the warning label on the gear case been legible, he still would have removed the gear case cover. His two co-workers testified that had the warning label been legible, they would not have removed the cover.

It is undisputed that the manual was not easily available to the three maintenance workers. The maintenance coordinator testified by deposition that when work needed to be done on the crane, he would refer to the manual in trying to decide how to perform the task. He also testified that the day of the accident was the first time that he was involved with work on the gear case, and that he did not consult the manual on this matter. He further testified that had he read the warning in the manual, he would not have asked

Plaintiff and his co-workers to remove the gear case cover while there was a load suspended under the crane.

Plaintiff has identified two experts, Mr. Briem and Dr. David Lenorovitz. Mr. Briem's resume indicates that he has a bachelor's degree in metallurgical engineering. After graduation, he worked for several years as a consulting metallurgic engineer, and then moved to supervising groups of mechanical engineers and chemical engineers. In 1976, he began working for a company in St. Louis, where he supervised chemical and mechanical engineers and was responsible for design and construction of new chemical processing facilities. In 1983, he formed Briem Engineering, a firm of consulting engineers.

In his expert report, Mr. Briem opined that the accident occurred because there was no readable warning on the gear case which warned of the type of hazard at issue. Mr. Briem opined that a warning should have been placed in a location where it would be readable when the crane was operating in an industrial environment, where horizontal surfaces are covered in dust. Briem stated that there were "two obvious deficiencies" in the warning on the gear box: (1) it was on a flat horizontal surface; and (2) it did not address the specific hazard involved in this case, i.e., it only addressed the danger of having a load fall on someone beneath the load container, and not the danger of a gear under load popping out of its bushing. Accordingly, Mr. Briem opined that the placement and the content of the warning were deficient. Mr. Briem stated that the "findings and opinions in this report are based on a reasonable degree of engineering certainly." The report further states as follows: "Briem Engineering assessment of this situation is not

4

that of a human factor safety warning expert but rather as an engineering evaluation of the environment, the loading and operation of the basic unit."

In his deposition, Mr. Briem described the expertise and qualifications that he brought to this case. He testified that, in addition to the background delineated in his resume, in the past 20 years his company worked on over 250 cranes of various types, including overhead cranes. He testified that he worked on the design for warnings for a crane. He further testified that he had been in a number of industrial environments, including foundries, mines, and manufacturing facilities, and brought to the case "some information on the cleanliness and the way in which these plants do operate." Briem Depo. at 6-8.

Mr. Briem specifically stated that he was not a human factors expert. He stated that his company first performed a "failure analysis" in this case to understand what happened to cause Plaintiff's injury. No components of the gear case were found to be defective, and Mr. Briem had no criticisms of the crane, other than the placement and language of the warning on the gear case. Id. at 9-16. Mr. Briem testified that he first visited the Doe Run facility on June 4, 2004. He testified that in his opinion, even if the warning on the gear case would have been read, the accident still would have happened, because the warning did not warn of the hazard that actually occurred, and because the terms "load block" and "gear disengagement" were vague. Id. at 38-44, 73-74. Briem made another visit to the Doe Run plant on June 1, 2005. He opined that it should have been reasonably known that heavy-duty gear case would be going into an industrial environment. Id. at 612.

5

Mr. Briem stated that at trial, he would de discussing the "adequacy or inadequacy of the warning but not from a human factors assessment. That will be covered by Dr. David Lenoriwitz [sic]." When asked what expertise Briem was providing to the issue, as it was not in metallurgy or human factors, Briem responded that it was "my knowledge of cranes, my knowledge of industrial environments, and my knowledge of . . . the basic physics of how the gear box operates and the crane operates." Id. at 67-69. Mr. Briem testified that there was no defect in the design of the gear case, and had the maintenance workers lowered the load to the ground, the accident would not have happened. Id. at 75-79.

Mr. Briem testified that the warning label in question was placed "in an area that was very difficult to maintain it in a readable condition." Mr. Briem believed that the warning label should have been placed on the side of the gear case in a vertical position. When asked if he had ever testified in other cases about whether the location of a warning was adequate, Mr. Briem responded that he "may have," and that this is not often an issue. He testified that in the late 1980's early 1990's he had worked on a warning for a "Digger Derrick" crane. This was the main warning, placed on the mainframe base of the crane itself, warning personnel to stay away from the underside of the crane booms while the crane was in operation. Id. at 110-115.

Plaintiff's other expert, Dr. Lenorovitz, is a human factors expert, and pursuant to his expert report, it is anticipated that he will testify that both the placement and the content of both warnings in question were inadequate to warn of the hazard that caused Plaintiff's accident. With respect to the warning in the manual, he opined that it was

6

deficient because, among other things, it was in a section of the manual entitled "Periodic Inspection and Preventative Maintenance," rather than in the sections labeled "Operational Diagnostics" or "Trouble Shooting"; and the manual had no unified index. Neither Defendant challenges Dr. Lenorovitz's qualifications or anticipated testimony.

## DISCUSSION

### Partial Summary Judgment on Failure-to-Warn Claims

Defendants argue that they are entitled to summary judgment on Plaintiffs failure-to-warn claims based upon the contents of the warning label on the gear case and of the warning in the manual. Summary judgment is appropriate when, viewing the evidence most favorably to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); summary judgment is not appropriate if the prima facie case is supported by specific facts sufficient to raise a genuine issue for trial. Thompson v. Hirano Tecseed Co., 456 F.3d 805, 808 (8th Cir. 2006). The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

It is undisputed that Missouri substantive law governs this diversity case. In Missouri, there are five elements of a strict liability failure to warn claim: (1) the defendant sold the product in the course of its business; (2) when used as reasonably anticipated and without knowledge of its characteristics, the product was unreasonably dangerous at the time of sale; (3) the defendant did not give an adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff

was damaged as a direct result of the product not having an adequate warning. Tenbarge v. Ames Taping Tool Sys., Inc., 190 F.3d 862, 866 (8th Cir. 1999) (citing Tune v. Synergy Gas Corp., 883 S.W.2d 10, 13 (Mo. 1994) (en banc)).

To make a submissible case on causation in such a claim, the plaintiff must show that the product caused his injuries, and that an adequate warning would have altered his behavior. Tune, 883 S.W.2d at 14; Arnold v. Ingersoll-Rand Co., 834 S.W.2d 192, 194 (Mo. 1992) (en banc). "In determining the adequacy of a warning, this court considers the placement of the warning, its language and how it may or may not impress the average user." Brown v. Bay State Abrasives, 821 S.W.2d 531, 533 (Mo. Ct. App. 1991).

With respect to the warning label on the gear case, Defendants do not argue that Plaintiff failed to create a material dispute on whether the placement of the label on the gear case rendered the warning inadequate. But both Defendants argue that they are entitled to summary judgment on the claims based upon the contents of this warning, as it is undisputed that neither Plaintiff, the other two maintenance workers who were with him at the time of the accident, nor the maintenance coordinator read this warning label. Defendants argue that therefore, Plaintiff cannot show that any amendment or modification to the contents of the warning label would have altered the behavior of the individuals involved in the removal of the gear case cover. See, e.g., Nelson v. Ford Motor Co., 150 F.3d 905, 907 (8th Cir. 1998) (holding in a products liability case that under Missouri law, the district court correctly dismissed prior to trial plaintiff's failure-to-warn claim, where plaintiff did not read the warnings that were provided).

In response to the motions for partial summary judgement, Plaintiff relies upon the rebuttable presumption recognized in Missouri that where a plaintiff did not know of a non-obvious hazard, adequate warnings would have been heeded. See, e.g., Arnold, 834 S.W.2d at 194. Plaintiff also argues that in this case, the question of the placement of the warning label and the question of the contents of the warning label are inextricably intertwined. The Court agrees. Here Plaintiff's claims are based upon the premise that the reason for the failure to read the warning label was not due to any fault on the part of Plaintiff (or his co-workers and supervisor), but was due to the faulty placement of the label. Neither in their summary judgment materials, nor at oral argument, did Defendants concede that if a jury found that Defendants' placement of the warning label on top of the gear case rendered the warning inadequate, then Plaintiff would prevail on his failure to warn claims. Though invited to make such a concession at oral argument, Defendants maintained that Plaintiff would be entitled to the judgment on the issue of liability only if he proved all the elements of his claim. The Court assumes from their statements at oral argument, the Defendants would hold Plaintiff to his burden to prove that had the label been properly placed, he would have altered his behavior, i.e., he would not have removed the gear case cover. Plaintiff cannot, accordingly, be precluded from showing that the contents of the warning label were also deficient, such that had the warning label been properly placed, and had the contents of the warning also been proper, the accident would not have occurred.

With respect to the warning in the manual, the summary judgment motions and memoranda in support ask for judgment on Plaintiff's claims insofar as they relate to the

contents of this warning. At oral argument, Defendants argued that they are entitled to summary judgment on the entire claim that the manual's warning was inadequate, including the location/placement of the warning. Defendants have asserted, however, that it is not only Plaintiff's conduct, but also the conduct of the other individuals involved in the repair that is at issue. From a review of the deposition testimony, including that of the maintenance coordinator, the Court finds that issues of fact exist as to whether any such individuals would have proceeded differently had the warning in the manual been presented or worded differently, and as above, finds the placement and content to be inextricably intertwined.

**Exclusion of Expert's Testimony**

Both Defendants challenge the admissibility of Mr. Briem's opinions. They argue that Mr. Briem is not qualified to render an expert opinion on either the placement of the warning on the gear box, or its content. The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001). Rule 702, provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 was amended to its current form in 2000 in response to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), in which the Supreme Court charged trial judges with acting as gatekeepers to exclude unreliable expert testimony. See Robertson

v. Norton Co., 148 F.3d 905, 907-08 (8th Cir. 1998) (applying Daubert to proposed expert testimony on the adequacy of a warnings in a products liability case). The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. Daubert, 509 U.S. at 592; Lauzon, 270 F.3d at 686. Rule 702 is a rule of admissibility rather than one of exclusion. Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006); Lauzon, 270 F.3d at 686.

Proposed expert testimony must meet three prerequisites to be admissible under Rule 702: (1) the evidence of specialized knowledge must be useful to the trier of fact, i.e., it must be relevant; (2) the proposed witness must be qualified to give expert testimony in a particular filed; and (3) the expert's opinion must be reliable in that the expert utilized reliable principles and methodology in arriving at the opinion. Lauzon, 270 F.3d at 686. Daubert lists several nonexclusive factors a court may examine in performing its "gatekeeper" role of screening expert testimony for relevance and reliability. These are (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted. Daubert, 509 U.S. at 593; see also Lauzon, 270 F.3d at 686-87. The trial court retains great flexibility in customizing the analysis to fit the facts of each case. Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1083 (8th Cir. 1999).

Here, the Court does not believe that Mr. Briem is a qualified expert in the area of the placement of warnings. He as much as admitted such, both in his expert report and in his deposition, as cited above. Mr. Briem was only involved in drafting, and presumably

placing, one warning, and that was approximately 15 years prior to his involvement in this case.  Furthermore, while the product involved in his prior experience was a crane, it was not an overhead crane operating in an industrial setting, as in the present case.  Clearly, Mr. Briem is a qualified expert in crane design and manufacture, and the record suggests that it was due to this expertise that his firm was initially contacted by Plaintiff.  But his education and experience do not qualify him as a warnings expert.  See Robertson, 148 F.3d at 907 (admitting testimony of expert as to manufacturing defect, but not as to the defect of the warning label).

Furthermore, Mr. Briem's opinion that the warning sign on the gear case should have been placed on the side of the case, not on the top, is not founded on data, nor on some acceptable methodology.  See Jaurequi, 173 F.3d at 1084 (affirming district court's exclusion of expert testimony that warnings on a corn head for a combine were deficient in placement, design, orientation, and content, as unreliable because experts had not designed a warning device which would have been more appropriate, and did not show that other manufacturers of farm machinery were employing the type of pictorial warnings plaintiff claimed should have been used); Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297-98 (8th Cir. 1996) (excluding testimony of proposed expert on design of tire-changing machine, because no testing ever took place, and no peer review or testimony regarding general acceptance was offered).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Whiting Corporation's motion for summary judgment with respect to Plaintiff's claims that the contents of the warnings were inadequate is **DENIED**. [Doc. #30]

**IT IS FURTHER ORDERED** that Defendant Wazee Electric Company's motion for summary judgment with respect to Plaintiff's claims that the contents of the warnings were inadequate is **DENIED**. [Doc. #37]

**IT IS HEREBY ORDERED** that Defendant Wazee Electric Company's motion to exclude Plaintiff's expert James J. Briem is **GRANTED**. [Doc. #34]

**IT IS FURTHER ORDERED** that Defendant Whiting Corporation's motion to exclude Plaintiff's expert James J. Briem is **GRANTED**. [Doc. #35].

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of August, 2007.